IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KENNETH CHARLES HANLEY<br>5917 Meadow Road<br>Baltimore, Maryland 21206-2135<br>on behalf of himself and others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br>One State Farm Plaza, Bloomington, IL 61710,<br><br>      Defendant. | Civil Action No.: |

## CLASS ACTION COMPLAINT

Plaintiff Kenneth Charles Hanley ("Plaintiff") hereby files this Class Action Complaint on behalf of himself and the Class as defined herein against State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") and alleges as follows:

## INTRODUCTION

1. State Farm provides coverage to insureds throughout the State of Maryland through policies governed by policy booklets that provide the terms and conditions of coverage.

2. When an insured is involved in an accident in which State Farms determines that his or her vehicle is determined a "total loss," on information and belief the policy provides that State Farm will pay the insured the "actual cash value" of the vehicle, minus any deductible. The policy does not define "actual cash value."

3. State Farm, however, does not pay the actual cash value of vehicles that are deemed total losses. Instead, as discussed further below, it identifies the market value of comparable vehicles—described as the "advertised price" of those vehicles—but it then reduces the "advertised price" of each comparable vehicle "to account for typical negotiation," calculating what it calls the "selling price." Only then does State Farm adjust for differences in mileage and condition—resulting in an "adjusted price," which State Farm then averages across the identified comparable vehicles to determine the "total condition adjusted market value," which is then adjusted for taxes and deductibles.

4. Nothing in the policies, or Maryland law, authorizes State Farm to impose a "typical negotiation" reduction (the "Typical Negotiation Reduction"). As explained below, to calculate "actual cash value," the policies and Maryland law permit State Farm to identify the selling price of comparable used cars, and to adjust those values for mileage, equipment, and condition. They do not permit any "typical negotiation" reduction.

5. State Farm knows at the time it issues these policies to its insureds that if it determines an insured's vehicle is a total loss, it will apply a downward adjustment "to account for typical negotiation." Yet neither this term nor the practice is described or authorized anywhere in State Farm's policies or under applicable Maryland law.

6. This action challenges State Farm's improper scheme and uniform business practice of taking improper and arbitrary Typical Negotiation Reduction on all Maryland total loss claims in order to systematically undervalue total loss claims and illegally increase State Farm's own profits.

**PARTIES**

7. Plaintiff Kenneth Charles Hanley resides in Baltimore County, Maryland, and is a citizen of Maryland. At all relevant times hereto, Plaintiff was contracted with State Farm for

automobile insurance. On or about March 6, 2019, Plaintiff's insured vehicle, a 2012 Honda Civic Sedan LX Automatic, was deemed a total loss.

8. Defendant State Farm is an Illinois corporation with its corporate headquarters at One State Farm Plaza, Bloomington, IL 61710. It is an automobile insurance company authorized to do business in Maryland, and at all relevant times was engaged in the marketing, sale, and issuance of automobile insurance policies in Maryland. State Farm owns numerous offices throughout the United States, including in Maryland. Defendant State Farm conducts business in Maryland through insurance agents and other company personnel.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1441 (a)-(b), and 1453. Plaintiff and all putative Class Members are citizens of Maryland. Defendant is an Illinois corporation with its principal place of business in Bloomington, IL, and, at all times relevant hereto, was engaged in the business of automobile insurance. There are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. § 1391, as the conduct giving rise to Plaintiff's claims occurred in this District. Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

11. At all relevant times, Plaintiff maintained, and continues to maintain, an automobile insurance policy from State Farm. On information and belief, Plaintiff's State Farm automobile insurance policy is a form contract drafted and utilized by State Farm, with terms materially identical to the policies of the putative Class Members.

12. On information and belief, under the terms of State Farm's automobile insurance policies with Plaintiff and the putative Class, when a policyholder files a claim for loss caused to

a covered vehicle, the contract gives State Farm the option to either: (a) pay the cost to repair the vehicle minus any deductible; or (b) pay the vehicle's (pre-accident) "actual cash value," minus any applicable deductible.

13. On information and belief, if State Farm determines that a vehicle is a "total loss"—meaning that the cost of repairs would exceed the vehicle's value—the policies require State Farm to pay the "actual cash value" of the vehicle, minus any applicable deductible. The term "actual cash value" is not defined in the contract.

14. Plaintiff owned a 2012 Honda Civic Sedan LX Automatic (VIN: 2HGFB2F51CH512287), which was insured by State Farm that was deemed a total loss on or about March 6, 2019. As a result, he filed a claim under his State Farm policy. On or about March 15, 2019, State Farm determined that Plaintiff's vehicle was a covered vehicle and exercised its option under the policy to declare it a total loss.

15. To determine the actual cash value of Plaintiff's vehicle, State Farm used an Autosource valuation report prepared by Audatex, a third-party vendor that State Farm contracts with for this purpose. A copy of the valuation report used and relied upon by State Farm is attached hereto as Exhibit A.

16. Audatex uses a software program called "Autosource Market-Driven Valuation" ("AMDV") to calculate the value of a total loss vehicle.

17. State Farm purports to determine the actual cash value of total loss vehicles through Audatex's AMDV software system. The Autosource system uses automated steps to calculate what State Farm then represents to be the "actual cash value" of the total loss vehicle.

18. First, it identifies the "**advertised price**" of several vehicles that it identifies as comparable to the total loss vehicle that had been advertised online in the relevant market.

19. Second, it takes the reduction at issue here: it reduces the "advertised price" of each comparable vehicle by a fixed percentage (the Typical Negotiation Reduction). The explanation in the Autosource valuation report for that reduction is "to account for typical negotiation." The price reduced for "typical negotiation" is then listed as the "**selling price**." *See, e.g.*, Ex. A at 4.

20. Third, it adjusts the prices of those comparable vehicles listed for sale online to account for differences in equipment, mileage, and vehicle configuration, as would be expected, resulting in an "**Adjusted Price**" for each comparable vehicle. *See, e.g.*, Ex. A at 1-2.

21. Fourth, it takes the adjusted prices for the comparable vehicles, to reach a "**Total Condition Adjusted Market Value**" for the insured's vehicle (*see, e.g.*, Ex. A at 2), which it represents to insureds as being the "**Actual Cash Value**" of the insured's total loss vehicle. Ex. B at 1.

22. The Typical Negotiation Reduction that State Farm took in calculating the amount to be paid to Plaintiff ranged from 6 to 8 percent, ultimately reducing the amount State Farm paid Plaintiff by $675.75. State Farm calculated each of the above amounts, for each of the identified comparable vehicles, as follows:

|  | Comparable Vehicles | | | |
| --- | --- | --- | --- | --- |
|  | #1 | #2 | #3 | #4 |
| **Advertised Price** | $10,787 | $8,995 | $9,483 | $9,596 |
| **"Typical Negotiation" Reduction** | -$647 (6.0%) | -$720 (8.0%) | -$664 (7.0%) | -$672 (7.0%) |
| **Selling Price** | $10,140 | $8,275 | $8,819 | $8,924 |
| **Mileage adjustment** | -$745.00 | $300.00 | -$185.00 | $50.00 |
| **Other adjustments** | $0.00 | $170.00 | $0.00 | $0.00 |
| **Adjusted Price** | $9,395.00 | $8,745.00 | $8,634.00 | $8,974.00 |

23. Based on these calculations, State Farm represented to Plaintiff that the "Actual Cash Value" of his 2012 Honda Civic was $8,937.00, representing the average of the Adjusted Prices listed above.

24. Each time State Farm, through Audatex's automated system, undertakes to determine the value of a total loss vehicle, it takes several steps that are to be expected for vehicle valuation, including identifying the advertised price for comparable vehicles, and adjusting for differences in equipment, mileage, and vehicle configuration. But before State Farm makes any of those expected adjustments, it applies the Typical Negotiation Reduction.

25. As stated above, State Farm's policies require payment of "actual cash value." In addition, the applicable Maryland regulations, which are incorporated into the policies, require among other things that "[i]f an insurer elects to make a cash settlement for the total loss of a motor vehicle" and if the insurer uses a "computerized data base" to do so, the insurer's selected database must "produce[] *statistically valid fair market values* for a substantially similar vehicle" (emphasis added). COMAR § 31.15.12.04.

26. The parties' insurance policies do not mention any Typical Negotiation Reduction, let alone authorize it. Likewise, there is no authorization under Maryland law permitting the arbitrary Typical Negotiation Reduction.

27. To the contrary, imposition of the Typical Negotiation Reduction results in payment substantially less that "actual cash value," and constitutes a methodology that does not produce statistically valid fair market values for a substantially similar vehicle.

28. State Farm provides no data or explanation of industry practices in its insurance policies or valuation reports to support any Typical Negotiation Reduction, much less one at between 6 and 8 percent as in Plaintiff's report.

29. The only stated reasons given for its downward adjustment to the list price of the comparable vehicles are: "The selling price may be substantially less than the asking price. When indicated, the asking price has been adjusted to account for typical negotiation according to each

6

comparables [sic] price," Ex. A at 4, and "The advertised price of $[] was adjusted to account for typical negotiation." *Id*. at 4-5. But as explained further below, a 6-8 percent reduction on a used vehicle's internet price is not remotely typical and does not reflect market realities.

30. The internet has changed the used car industry. Online car shoppers often are sophisticated consumers who compare the online listed price of a vehicle across multiple dealers in a broad geographic region. In this new market, to remain competitive, dealers typically list prices online that are "priced to market." That is, car dealers list what is essentially the "best offer" or lowest possible price at which they can still maintain a profit margin, and do not negotiate from that price. Online shoppers can buy the car or not; what they generally cannot do is negotiate the price down. It is rare—and certainly not "typical"—for dealers to advertise inflated prices and to negotiate a discount off a car's internet advertised price. Carmax, for example, touts that its "'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve" (https://www.carmax.com/about-carmax). Likewise, for used cars sold in-person, where the price listed on the lot is not easily comparable to multiple other car dealers, prices are rarely negotiated down, and often are sold for higher than their online listed price.

31. In addition, in light of the COVID-19 pandemic and related supply chain problems with parts such as electronics and microchips for vehicles, used cars have been selling for an all-time high premium, with sales prices typically *increasing* from the posted price, if changing at all.

32. Upon information and belief, State Farm's Typical Negotiation Reduction is a blanket percentage reduction of the selling price of a comparable vehicle based on the listing price. Rather than basing the adjustment on any tangible features of the available vehicle or otherwise, the Typical Negotiation Reduction is arbitrarily applied as a universal percentage reduction to any

vehicle in a given price range. The valuation report does not supply any factual basis supporting the amount of the deduction or the decision to apply the deduction.

33. By imposing a Typical Negotiation Reduction, State Farm systematically pays insureds less than the actual cash value of total loss vehicles. These deductions neither represent consumer purchasing behavior nor reflect the market realities described above. The methodology used to calculate those values is not a statistically valid approach for assessing actual cash value.

34. Furthermore, State Farm applies the Typical Negotiation Reduction without contacting the identified dealerships or sellers, or even considering whether the car dealer *ever* discounts its price from the online listed price. Although the price for each of the four comparable vehicles reflected on Plaintiff's valuation report had a different listed price, the report does not explain the percentage deduction, nor does it provide any itemization, thus further reinforcing the arbitrariness of this bogus deduction.

35. State Farm unilaterally chooses to include the Typical Negotiation Reduction in the Autosource valuation reports it utilizes. Upon information and belief, State Farm instructs Audatex as to what specific data to include in the report as the basis for the valuation, including whether to apply a Typical Negotiation Reduction. Upon information and belief, State Farm does not instruct Autosource to apply Typical Negotiation Reductions to comparable vehicles in all states in which State Farm or its affiliates operate.

36. The impropriety and arbitrariness of State Farm's Typical Negotiation Reductions are further demonstrated by the fact that Audatex's primary competitor in providing valuation reports to insurance companies, CCC Intelligence Solutions, does not apply Typical Negotiation Reductions in this manner. Instead, CCC Intelligence Solutions uses list prices.

**CLASS ACTION ALLEGATIONS**

37. Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks certification of a Class defined as follows:

> All State Farm insureds (1) with Maryland first party personal line policies issued in Maryland, (2) who received compensation, within three (3) years of the filing of this action, for the total loss of their own vehicles under their First Party (Comprehensive, Collision, and UMPD) coverages, and (3) whose claim was settled using the amount determined by a total loss valuation from Audatex based on the value of comparable vehicles which took a deduction or adjustment for "typical negotiation."

38. Excluded from the Class are: (a) State Farm and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

39. The Class can be readily identified through records obtained from State Farm and/or Audatex related to the total loss claims of the proposed Class.

40. *Numerosity*. The Class is so numerous that individual joinder is impracticable. State Farm reported in 2020 that it has 827,000 auto insurance customers in Maryland. On information and belief, State Farm applies the Typical Negotiation Reduction to all total loss claims in Maryland. The Class therefore contains thousands of members at minimum.

41. *Typicality*. Plaintiff's claims are typical of the Class he seeks to represent. Like all Class Members, State Farm applied a Typical Negotiation Reduction to Plaintiff's total loss claim and thereby reduced his final payment. Plaintiff's claims arise out of the same conduct and are based on the same legal theories as those of the putative Class Members.

42. *Adequacy of Class Representative*. Plaintiff will fairly and adequately protect the interests of the Class. He is aware of his fiduciary duties to putative Class Members and is

determined to faithfully discharge his responsibility. Plaintiff's interests are aligned with (and not antagonistic to) the interests of the Class.

43. *Adequacy of Counsel.* In addition, Plaintiff has retained competent counsel with considerable experience in class action and other complex litigation. Plaintiff's counsel have done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

44. *Commonality and Predominance.* This case presents numerous questions of law and fact with answers common to the Class that predominate over questions affecting only individual Class Members. Those common questions include:

   a. Whether the parties' contract allowed State Farm to apply a Typical Negotiation Reduction to total loss claims;

   b. Whether State Farm's use of a Typical Negotiation Reduction complied with COMAR § 31.15.12.04 and related Maryland regulations;

   c. Whether State Farm's use of a Typical Negotiation Reduction breached the implied covenant of good faith and fair dealing;

   d. Whether Plaintiff and the Class are entitled to compensatory damages and/or equitable relief; and

   e. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief as requested herein.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

45. Plaintiff incorporates by reference all of the above allegations.

46. Plaintiff and the Class entered insurance contracts with State Farm.

47. Plaintiff and the Class have performed their duties under the contract in all material respects.

48. By applying the Typical Negotiation Reduction to total loss claims filed by Plaintiff and the Class, State Farm breached its duties under the terms of the contract.

49. *First*, State Farm breached an express term of the contract. Under the express terms of the contract, State Farm had a duty to pay Plaintiff and the putative Class the "actual cash value" (minus any applicable deductible) of their coverage vehicles that State Farm determined to be a total loss.

50. State Farm itself determined that Plaintiff and the putative Class had suffered a total loss of a coverage vehicle.

51. When State Farm paid Plaintiff and the Class, however, it took a deduction for "typical negotiation."

52. The Typical Negotiation Reduction is not a legitimate component of "actual cash value" because, among other things, it is arbitrary, not based on objective or verifiable information, and has no basis in the realities of the marketplace.

53. State Farm therefore breached an express term of the contract.

54. *Second*, State Farm violated Maryland's insurance regulations governing trade practices in the business of insurance, including COMAR §§ 31.15.12.02-.06, which on information and belief are incorporated into the policy.

55. As described above, State Farm has violated Maryland's total loss regulation, and hence breached its contract with its insureds, by, among other things, not basing its settlement of total loss claims on the basis of "the retail value for a substantially similar motor vehicle from a nationally recognized valuation manual or from a computerized data based that provides statistically valid fair market values for a substantially similar vehicle." *See* COMAR §§ 31.15.12.04-.05.

56. *Third*, State Farm breached the implied covenant of good faith and fair dealing, which is implied and incorporated into every contract, including insurance policies, in the state of Maryland.

57. The term "actual cash value" is undefined in the parties' insurance contract that State Farm drafted, and its meaning was not resolved explicitly by the parties. The parties' contract also does not mention or discuss the Typical Negotiation Reduction. State Farm thus had a duty to act reasonably and refrain from taking opportunistic advantage of Plaintiff and the putative Class when determining the actual cash value of their vehicles.

58. When determining the actual cash value of vehicles belonging to Plaintiff and the putative Class, State Farm took advantage of them and frustrated their reasonable expectations under the contract by applying the Typical Negotiation Reduction, which is arbitrary, not based on objective or verifiable information, and has no basis in industry customs or the realities of the marketplace.

59. State Farm therefore breached the implied covenant of good faith and fair dealing.

60. As a result of State Farm's breaches of contract, Plaintiff and the Class have suffered damages. The Typical Negotiation Reduction necessarily reduced their final payments.

61. Therefore, State Farm is liable for breach of contract.

## SECOND CAUSE OF ACTION
## DECLARATORY AND INJUNCTIVE RELIEF

62. Plaintiff incorporates by reference all of the above allegations.

63. A dispute between a Plaintiff and the putative Class and State Farm is before this Court under Maryland law concerning the construction of the Class members' policies and COMAR §§ 31.15.12.02-.06 and whether State Farm's use and application of the Typical Negotiation Reduction violates the policy and the regulations.

64. State Farm's unlawful scheme and uniform business practice as described herein are ongoing. Plaintiff remains a current insured of State Farm. Accordingly, as detailed above, State Farm has violated, and continues to violate, its policies and Maryland's total loss regulations by applying the Typical Negotiation Reduction to reduce the valuation of Plaintiff's and the Class's total loss vehicles.

65. Plaintiff, therefore, seeks (1) a declaration on behalf of himself and the Class he seeks to represent that State Farm's application of the Typical Negotiation Reduction violates State Farm's policies and COMAR §§ 31.15.12.02-.06, and (2) appropriate injunctive, equitable and monetary relief based on and flowing from the declaration.

## PRAYER FOR RELIEF

66. Plaintiff, individually and on behalf of all other similarly situated, hereby demands:

   a. Certification of the proposed Class;

   b. Appointment of the undersigned counsel as class counsel;

   c. An order declaring that State Farm's use of a Typical Negotiation Reduction is unlawful and enjoining State Farm from engaging in any further unlawful conduct;

   d. An award of all damages, including attorneys' fees and reimbursement of litigation expenses, that are recoverable under applicable law;

   e. Restitution or disgorgement of State Farm's ill-gotten gains; and

   f. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY DEMAND

67. Plaintiff demands a jury trial on all applicable claims.

Respectfully submitted this 4th day of April, 2022.

/s/ *Adam B. Abelson*
Adam B. Abelson (#29532)
Aiza H. Siddiqi (#21460)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332–0444; (410) 659–0436 (fax)
aabelson@zuckerman.com

/s/ *Benjamin S. Salsbury*
Benjamin S. Salsbury (#28850)
SALSBURY SULLIVAN, LLC
100 N. Charles Street, Suite 900
Baltimore, Maryland 21201
(443) 869-3920; (443) 835-2678 (fax)
bsalsbury@salsburysullivanlaw.com

/s/ *Benjamin Finley*
J. Benjamin Finley (*pro hac vice application forthcoming*)
Kirkland E. Reid (*pro hac vice application forthcoming*)
N. Nickolas Jackson (*pro hac vice application forthcoming*)
THE FINLEY FIRM, P.C.
200 13th Street
Columbus, Georgia 31901
(706) 322-6226
bfinley@thefinleyfirm.com
kreid@thefinleyfirm.com
njackson@thefinleyfirm.com

/s/ *MaryBeth V. Gibson*
MaryBeth V. Gibson (*pro hac vice application forthcoming*)
THE FINLEY FIRM, P.C.
Piedmont Center
3535 Piedmont Road
Building 14, Suite 230
Atlanta, Georgia 30305
(404) 320-9979
mgibson@thefinleyfirm.com

/s/ *R. Brent Irby*
R. Brent Irby (*pro hac vice application forthcoming*)
IRBY LAW, LLC
2201 Arlington Avenue

14

South Birmingham, Alabama 35205
(205) 545-8334
brent@irbylaw.net