IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KENNETH CHARLES HANLEY,** on behalf of himself and others similarly situated, | * |
| | * |
| **Plaintiff,** | * |
| | *   Case No. 1:22-cv-00809-JRR |
| v. | * |
| | * |
| **STATE FARM MUTUAL AUTOMOBILE, INSURANCE COMPANY,** | * |
| | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This matter comes before the court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Summary Judgment or, in the Alternative, to Compel Appraisal and Stay. (ECF No. 141; "the Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

**I.   PROCEDURAL BACKGROUND**

On April 4, 2022, Plaintiff filed the Class Action Complaint against State Farm. (ECF No. 1.) On May 27, 2022, State Farm filed a motion to dismiss, which was denied. (ECF Nos. 18, 19, 33.) On May 22, 2023, Plaintiff filed an Amended Class Action Complaint in response to which State Farm filed a Motion for Summary Judgment or, in the Alternative, to Compel Appraisal and Stay. (ECF Nos. 66, 69, 81, and 91.) Subsequently, on September 1, 2023, Plaintiff filed a motion for leave to file a second amended complaint seeking to add an additional named Plaintiff and class representative, Zenia Joyner, which the court granted. (ECF Nos. 105, 126, and 127.) On January 23, 2024, the parties filed a stipulation of voluntary dismissal of Plaintiff Joyner as named plaintiff and class representative. (ECF No. 134.) The parties further stipulated that, as a result of

the dismissal of Plaintiff Joyner, the operative pleadings are the Amended Class Action Complaint filed at ECF No. 66 and State Farm's Answer filed at ECF No. 73. *Id.* The Amended Class Action Complaint (the "Complain") sets forth two causes of action: Breach of Contract (Count I); and Declaratory and Injunctive Relief. (Count II).

On January 30, 2024, State Farm refiled the instant Motion for Summary or, in the Alternative, to Compel Appraisal and Stay.[1] (ECF No. 141.) State Farm moves for summary judgment on the following grounds: (1) Plaintiff's claims are time-barred; and (2) even if the court finds the claims are timely, Plaintiff cannot recover because he failed to comply with a mandatory appraisal provision of his policy. (ECF No. 141-1 at 9-18.)[2] In the alternative, Defendant argues that the court should compel appraisal and stay the action pending its outcome. *Id.* at 18-20.

II.     **UNDISPUTED MATERIAL FACTS**

On March 6, 2019, Plaintiff's vehicle, a 2012 Honda Civic, was involved in an accident. (Def.'s Mot., Exhibit 2, Decl. of Matthew Moench, ECF No. 141-2.) At the time of the accident, Plaintiff's vehicle was insured by State Farm, so he filed a claim for property damage to his vehicle under his State Farm policy. *Id.* State Farm determined that Plaintiff's vehicle was a total loss. *Id.* Under the terms of the policy, State Farm had the option to (1) pay the cost to repair the vehicle minus any deductible; or (2) pay the vehicle's (pre-accident) "actual cash value . . . minus any applicable deductible." (Def.'s Mot., Exhibit B to Moench Decl., Insurance Policy, ECF No. 141-4 at 19.) To help estimate the actual cash value of Plaintiff's vehicle, State Farm used an

---

[1] The Motion at ECF No. 141 is identical to State Farm's Motion for Summary Judgment or, in the Alternative, to Compel Appraisal and Stay filed at ECF No. 69. Pursuant to the court's order at ECF No. 137, State Farm refiled the Motion. The parties were not required to refile the response and reply at ECF Nos. 81 and 91. Accordingly, in ruling on the Motion at ECF No. 141, the court considers the response and reply at ECF Nos. 81 and 91.
[2] Throughout this memorandum, citation to document page numbers refer to the page number within the original source, not pagination assigned by the ECF system.

Autosource valuation report prepared by Audatex, a third-party that provides vehicle valuation services.  (Moench Decl. ¶ 5; *see also* Complaint ¶¶ 8, 15-16.)

The Autosource valuation report estimated that the actual cash value of Plaintiff's vehicle was $8,937.00.  (Def.'s Mot., Exhibit C to Moench Decl., Insurance Policy, ECF No. 141-5 at 2; *see also* Complaint ¶ 24.)   On March 15, 2019, State Farm sent Plaintiff a letter providing the following breakdown:

| | |
|---|---|
| Actual Cash Value: | $8,937.00 |
| Plus: Taxes | + $536.22 |
| License and Title Fees: | + $110.00 |
| Less: Deductible | -$500 |
| Retained Salvage Value (if applicable): | -$1,511.67 |
| Payment to Lienholder (if applicable): | -$0.00 |
| | |
| Net amount payable to you: | $9,083.22 |

(Def.'s Mot., Exhibit G to Moench Decl., March 6, 2019 Letter, ECF No. 141-9 at 5.)  Plaintiff disagreed with State Farm as to the actual cash value of his car.  (Def.'s Mot., Exhibit 1 to Eric Robertson Decl., Hanley Dep., ECF No. 141-14 at 94:9-14.)  On March 19, 2019, State Farm paid Plaintiff $9,083.22 in accordance with the above-referenced letter.  *Id.* at 107:17-108:8.  On April 4, 2022, Plaintiff filed the instant action.  (ECF No. 1.)

### III.  LEGAL STANDARD

**Federal Rule of Civil Procedure 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.   Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, this court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  This court "must not weigh evidence or make credibility determinations."  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

IV.    **ANALYSIS**

As an initial matter, the court notes that State Farm requested that the court rule on the Motion before deciding class certification and further requested that the court suspend Plaintiff's

deadline to file a motion for class certification until the court resolves the instant Motion, which the court granted.³ (ECF Nos. 133, 137.)

In *White v. Bank of Am., N.A.*, this court explained:

> According to Federal Rule of Civil Procedure 23(c), the district court should determine the propriety of class certification "at an early practicable time" after the commencement of an action brought as a class action. FED. R. CIV. P. 23(c). Whether substantive rulings can be made before class certification is a question subject to the court's discretion.
>
> Ruling on dispositive motions prior to class certification may run the risk of encouraging class members to take advantage of a favorable ruling while not having to run the risk of an unfavorable ruling, a practice known as "one-way intervention." *Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147, 148 (D. Wis. 1984). Allowing one-way intervention exposes the defendant to a risk of a class of as-yet undefined numbers if the disposition on the substantive motion is favorable to the class, whereas if the ruling favors the defendant, he or she may still face subsequent litigation by other potential class members whose claims may not be barred by *res judicata* and will only be governed by stare decisis. *See id.* A motion granted under Rules 12 and 56 that would constitute a final judgment on the merits would bind only the individual parties (not the putative class members). *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340-41 (4th Cir. 2006).
>
> Despite these considerations, however, there is nothing explicit in Rule 23 that requires a determination on class certification prior to decisions on other motions. Often the court "may need to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004). An early decision on the merits may protect both parties and the court from needless expenditure of both time and money. *See Kim v. Commandant, Defense Language Inst.*, 772 F.2d 521, 524 (9th Cir. 1985) (holding that it was not improper for the district court to have reached the merits before class certification). Moreover, in cases where the defendant has filed the potentially dispositive motion, the defendant has waived the procedural safeguards of Rule 23, limiting the possible impropriety of an early decision on the merits, at least as

---

³ Plaintiff objected to the suspension of the deadline but deferred to the court's preference as to docket management. (ECF No. 137.)

5

> far as the defendant's protections are concerned. *See id.* (stating that where the defendant assumes the risk that judgment will have only stare decisis effect, it is within the district court's discretion to rule on the merits first). Thus, while it is prudent in some cases to consider class certification first, it is within the court's discretion to determine that judicial economy is better served by an early decision on the merits.

*White v. Bank of Am., N.A.*, No. CCB-10-1183, 2012 U.S. Dist. LEXIS 44044, *9-12 (D. Md. Mar. 27, 2012).

The court is satisfied that judicial economy is better served by ruling on the dispositive motion prior to considering class certification. *See White, supra*; *Derossett v. Patrowicz*, Civil Action No. DKC 21-1294, 2022 U.S. Dist. LEXIS 173564, at *1, n.1 (D. Md. Sep. 23, 2022) ("Because the rule is meant to protect defendants, a defendant may voluntarily forgo the rule's protections and 'moot' the class certification issue by moving for—and obtaining—summary judgment 'before the district judge decide[s] whether to certify the suit as a class action.'") (quoting *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995); *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) ("Where the defendant assumes the risk that summary judgment in his favor will have only stare decisis effect on the members of the putative class, it is within the discretion of the district court to rule on the summary judgment motion first."); *Mendez v. Radec Corp.*, 260 F.R.D. 38, 44-45 (W.D.N.Y. 2009) (noting that "a defendant can waive any objection to a decision on the merits prior to, or simultaneous with, a decision on class certification" by moving for summary judgment prior to class certification).

### A.      **Statute of Limitations and the Tolling Order**

"Limitations is a fact-intensive affirmative defense." *Washington v. Global Tel*Link Corp.*, Civil Action No. 8:20-cv-01932-PX, 2022 U.S. Dist. LEXIS 153075, at *6 (D. Md. Aug. 24, 2022). "[W]here no factual dispute exists that the claims are time-barred, summary judgment

6

may be granted on limitations grounds." *Id.* (citing *Hooper v. Sachs*, 618 F. Supp. 963, 981 (D. Md. 1985)) ("When the undisputed facts and inferences that flow from them lead to only one reasonable conclusion, summary judgment on a limitations issue may be appropriate.")).

State Farm argues that it is entitled to summary judgment because Plaintiff's claims are barred by application of Maryland's three-year statute of limitations. (ECF No. 141-1 at 9.) In response, Plaintiff argues that he is a beneficiary of a COVID-19-era Administrative Order of the Court of Appeals of Maryland (now the Supreme Court of Maryland), which, Plaintiff asserts, "tolled [limitations] for 126 days" (the "Tolling Order").[4]  Plaintiff agrees, however, that if the court determines that the Tolling Order does not operate to toll limitations here, Plaintiff's claims are time-barred. (ECF No. 81 at 4-5.)

The Tolling Order provides in relevant part:

> Deadlines related to the Initiation of Matters
>
> (a) By previous Orders and this Order, pursuant to Maryland Rule 16-1003(a)(7), **all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, were tolled or suspended, as applicable, effective March 16, 2020 through July 20, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency**; and
>
> (b) Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove the practical inability to comply with such a deadline if it occurred during the COVID-19 emergency to obtain the relief that this Order provides; and
>
> (c) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "tolled or suspended by the number of days that the courts were closed" means that the days that the offices of the clerks of court were closed to the

---

[4] The Supreme Court of Maryland (then the Court of Appeals) issued the Tolling Order in response to the COVID-19 outbreak, which led to a closure of state courts to the public from March 16 through July 20, 2020. (Pl.'s Resp., Exhibit 2, Tolling Order, ECF No. 81-3.)

7

> public (from March 16, 2020 through July 20, 2020) do not count against the time remaining for the initiation of that matter; and
>
> (d) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "matters" are, *nunc pro tunc* to March 16, 2020, those matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through the termination date of COVID-19 emergency operations in the Judiciary as determined by the Chief Judge of the Court of Appeals, that is, through April 3, 2022, but for the tolling or suspension described in this Order; and
>
> (e) With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters were extended by previous Order, by an additional 15 days; and
>
> (f) Any such filings made within the period described in (c) and (d) shall relate back to the day before the deadline would have expired had it not been tolled or suspended . . .

(Tolling Order, ECF No. 81-3; bold typeface added.)

### 1. The Complaint Was Filed More Than Three Years After Accrual

It is undisputed, and the court agrees, that absent operation of the Tolling Order, Plaintiff's claims are barred by the statute of limitations: following a March 6, 2019, accident involving his Honda Civic, Plaintiff filed an insurance claim with State Farm; State Farm declared the vehicle a total loss; thereafter, on March 19, 2019, State Farm paid Plaintiff what it calculated was the "actual cash value" of his vehicle. Plaintiff filed action in this court three years and 17 days after his claims accrued.[5] MD. CODE ANN., CTS. & JUD. PROC. § 5-101; *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 819, 822 (D. Md. 2015); *Allied Inv. Corp. v. Jasen*, 354 Md. 547,

---

[5] Plaintiff's claims accrued on the date when State Farm paid what it calculated was the "actual cash value" with which Plaintiff takes issue: March 19, 2019. (Hanley Dep. at 107:17-108:8.) *See Chevron U.S.A. Inc. v. Apex Oil Company, Inc.*, 113 F. Supp. 3d 807, 819 (D. Md. 2015) (noting that in Maryland, "the statute of limitations for a breach of contract claim usually begins to accrue on the date of the alleged breach"); *Robinson v. Pa. Nat'l Mutual Casualty Ins. Co.*, No. 21-cv-1601-LKG, 2023 WL 3477117, at *2 (D. Md. May 1, 2023) (noting that "the United States Court of Appeals for the Fourth Circuit has recognized that this statute of limitations period begins to run from the date of the alleged breach"). Plaintiff does not challenge this.

568 (1999) (citing *Com. Union Ins. Co. v. Port Hayden Co.*, 116 Md. App. 605, 659 (1997), *cert denied*, 348 Md. 205 (1997)).

### 2.     Interpretation of the Tolling Order

State Farm argues that the Tolling Order does not operate to toll the limitations period applicable to Plaintiff's claims because, per its plain language, it "applies only to matters 'required' to be filed in Maryland state court." (ECF No. 141-1 at 11.) In response, Plaintiff asserts that the Tolling Order suspended the limitations period applicable to the claims he brings in the Complaint for 126 days by operation of the *Erie*[6] doctrine, thus rendering his claims timely. (ECF No. 81 at 7-12.) In support of his argument, Plaintiff relies on *Liberty Mut. Ins. Co. v. Murphy*, No. 1:20-CV-01961-SAG, 2021 WL 2784264 (D. Md. July 2, 2021), *certified question answered*, 478 Md. 333 (2022)).

In *Liberty Mutual*, similar to the instant dispute, the parties disagreed whether the Tolling Order[7] tolled limitations in an action filed in this court. The court invited briefing on whether to certify a question to the Supreme Court of Maryland as to whether the state's high court "act[ed] within its enabling authority under, *inter alia*, the State Constitution and the State Declaration of Rights when its [Tolling Order] tolled Maryland's statutes of limitation in response to the COVID-19 pandemic."  2021 WL 2784264 at *1.  The parties objected (for different reasons) to certification of the question; the defendant took the position that the Tolling Order applied to state courts only and therefore no benefit would be had (or reason existed) to the certify the question.

In its opinion, the *Liberty Mutual* court examined whether the issue at hand met the standard factors used to assess whether a question is appropriate for certification to a state's high

---

[6] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that federal courts sitting in diversity apply state substantive law and federal procedural law).
[7] In *Liberty Mutual*, the court refers to the Tolling Order as the "Emergency Order."

9

court – *i.e.*, (i) whether the question to be certified may be determinative of an issue in the case; and (ii) whether any controlling legal authority addresses the issue. In the course of its analysis, the court explained that the defendant's position failed to account for the scope and purpose of the *Erie* doctrine:

> While it is true that the language of all three cited authorities[8] limits the scope of their applicability to state courts, that fact, without more, does not control in the context of a federal court sitting in diversity. The *Erie* doctrine requires the adoption of state substantive law in diversity cases, which the Fourth Circuit has determined includes state statutes of limitation and tolling provisions. The Emergency Order explicitly seeks to toll or suspend "all statutory and rules deadlines . . . including statutes of limitations," and thus would appear, on its face, to be substantive state law applicable in this diversity suit.
>
> Defendants have not cited, and the Court is not aware of, any precedent suggesting that the *Erie* analysis is altered by a state rule's self-described application exclusively to state courts. In fact, the Supreme Court has long held that a state's own characterization of its laws is not determinative in the *Erie* analysis, and that, instead, a federal court sitting in diversity must determine whether a state provision is "substantive" by examining the practical ramifications of the decision. To this end, the longstanding "outcome determinative" test, as well as an assessment of the Emergency Order's effect in light of *Erie*'s twin aims, confirms that it is substantive law that should be applied in this diversity suit. The Emergency Order is outcome determinative because, by extending the length of time a litigant has to file suit, it alters the outcomes of cases that would not have otherwise been timely filed. Those suits can now be heard on the merits instead of being dismissed on procedural grounds. The so-called twin aims of the *Erie* doctrine— to discourage forum shopping and to avoid inequitable administration of the laws—are similarly implicated here. If this Court concludes that the Emergency Order was procedural and inapplicable in federal court, it would result in differing, unequal outcomes in the two forums. Plaintiff would be able to bring certain claims in Maryland state court that it could not bring here, which would encourage precisely the sort of forum shopping that *Erie* aims to prevent.

---

[8] The Tolling Order, and its enabling legislation: Maryland Court Rules 16-1001, *et seq.,* and Article IV, § 18 of the Maryland Constitution.

*Id.* at *3 (internal citations omitted).  Therefore, the *Liberty Mutual* court concluded that the Tolling Order is state substantive law and must be applied in diversity cases.[9]  *Id.* at *4.

Here, the court agrees with the *Liberty Mutual* court that the Tolling Order is substantive law and that the court must therefore apply it in the instant action, a case brought here pursuant to diversity jurisdiction.  To the extent *Liberty Mutual* can be read to opine that the Tolling Order's suspension of limitations applies to cases not "required to be filed in a Maryland state trial or appellate court," this court does not agree.[10]  In any event, the parties here do not dispute, and the court agrees, that the Tolling Order is state substantive law and therefore, the court must consider it.  *See Sasso v. Koehler*, 445 F. Supp. 762, 765 (D. Md. 1978) ("As a general rule, when a state statute of limitations governs a claim, state law also governs other aspects of limitations, such as tolling.") (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975)).

Conclusion that the Tolling Order is state substantive law per the *Erie* doctrine does not end the court's inquiry; rather, it is just the first step.  After determining that the Tolling Order is state substantive law, the next step is to determine how it bears on the action before the court.  In so doing, the court turns to the principles of statutory construction to determine whether the Tolling Order operates to render timely Plaintiff's otherwise untimely Complaint.  *See Ceriani v.*

---

[9] The court is not persuaded that if the Supreme Court of Maryland had any doubt regarding the *Liberty Mutual* court's conclusion that the Tolling Order applies in diversity cases it would have said so.  (ECF No. 81 at 10.)  The question before the court was: "Did the Maryland Court of Appeals act within its enabling authority under, *inter alia*, the State Constitution and the State Declaration of Rights when its April 24, 2020 Administrative Order tolled Maryland's statutes of limitation in response to the COVID-19 pandemic?"  No. 1:20-CV-01961-SAG, 2021 WL 2784264, *5 (D. Md. July 2, 2021), *certified question answered*, 478 Md. 333, 274 A.3d 412 (2022).  "In responding to a certification from another court, [the Supreme Court of Maryland] resolves only issues of Maryland law, not questions of fact."  *Doe v. Catholic Relief Services*, 484 Md. 640, 651 (2023) (citation omitted).  Additionally, the court "may go no further than the question certified."  *Id.* (citation omitted).

[10] The *Liberty Mutual* court constrained its opinion and analysis regarding whether to certify a question as to the "validity" of the Tolling Order.  *Liberty Mut. Ins. Co. v. Murphy*, 2021 WL 2784264, *5.  The court did not hold that the Tolling Order operated to allow an otherwise time-barred action to be filed in this court; rather, the court's reference to its operation was in the context of addressing the defendant's misapprehension of the *Erie* doctrine.  As such, to the extent the *Liberty Mutual* court described the Tolling Order as operating to permit an otherwise time-barred action in *this* court, it is *dicta*; and, regardless, if it be reasonably viewed as a finding of the *Liberty Mutual* court, this court respectfully disagrees for the reasons discussed *infra*.

*Dionysus, Inc.*, 599 F. Supp. 3d 365, 369-70 (E.D. Va. 2022) (concluding that the Supreme Court of Virginia's emergency orders tolled the plaintiff's statute of limitations after analyzing the language used in the emergency orders to answer the question "whether the Emergency Orders operated to extend the statute of limitations and provide [p]laintiff with additional time to file her claim"); *Sasso v. Koehler*, 445 F. Supp. 762, 765 (D. Md. 1978) (recognizing that, under *Erie*, state law governs tolling but analyzing the case law regarding the tolling rule and concluding that it did not apply to the specific facts of the case).

Maryland courts and this court "follow[] the general principles of statutory interpretation." *Johnson v. Mayor of Balt.*, 430 Md. 368, 377 (2013).  In *Johnson v. Mayor of Baltimore*, 430 Md. 368, 377 (2013), the Supreme Court of Maryland explained the general principles of statutory interpretation:

> First, if the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end.  Second, when the meaning of the plain language is ambiguous or unclear, we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based.  Last, applying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant.  This Court, however, may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail.

*Johnson v. Mayor of Baltimore*, 430 Md. 368, 377 (2013) (internal citations and quotations omitted).[11]  Similarly, in *Ayes v. U.S. Dept. of Vet. Affairs*, the Fourth Circuit instructs:

---

[11] In *Lockshin v. Semsker*, the court instructed:
> Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources

> In interpreting a statute, "a court should always turn first to one, cardinal canon [of construction] before all others": the plain meaning rule. *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). We must presume that "Congress says in a statute what it means and means in a statute what it says . . . ." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)(internal quotation marks omitted). When the words of a statute are unambiguous, then, "this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank,* 503 U.S. at 254, 112 S.Ct. 1146 (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)). Of course, in looking to the plain meaning, we must consider the context in which the statutory words are used because "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

473 F.3d 104, 108 (4th Cir. 2006). Importantly, a cardinal rule of statutory construction provides that "courts must 'give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous.' When interpreting . . . words, we must give them their 'common and ordinary meaning.'" *Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005) (quoting *United States v. Ryan–Webster*, 353 F.3d 353, 366 (4th Cir. 2003), and *Mapoy v. Carroll,* 185 F.3d 224, 229 (4th Cir. 1999)).

Armed with these tools, the court begins by considering whether the Tolling Order's meaning is plain on its face, assigning the ordinary meaning to its words. Here, it is; the plain meaning of the Tolling Order provision in question is clear and unambiguous: ". . . all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, were tolled or suspended, as applicable,

---

> intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

412 Md. 257, 276 (2010) (internal citations omitted). Further, courts "must always give the statute 'a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.'" *McCloud v. Dep't of State Police*, 426 Md. 473, 480 (2012) (quoting *State v. Johnson*, 415 Md. 413, 422 (2010)).

13

effective March 16, 2020 through July 20, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency." By operation of the ordinary, dictionary meaning of the words employed by the rule-making drafters, the Tolling Order suspended limitations only for cases required to be filed in state court; the Tolling Order did not suspend limitations for cases not required to be filed in a state court, *e.g.*, where a claimant is not limited to seeking relief through state courts. To construe the Tolling Order to operate to suspend limitations for the "initiation of all matters" gives no meaning to the words "required to be filed in Maryland state trial or appellate courts" – thus rendering the phrase superfluous and ignoring the plain, dictionary meaning of the word "require." Such an outcome flies in the face of the most basic of construction building blocks.

Plaintiff asserts that "required to be filed" merely distinguishes between whether a matter requires judicial resolution or not:

> The Tolling Orders provide that if a party were otherwise required to have filed a complaint, or a motion, or other filing by a certain date, the deadline for such filing "shall be tolled or suspended" as set forth in the Tolling Order, such that the deadlines for any such "matters required to be filed"—as opposed to matters that are not required to be filed in a court—were tolled for 126 days.

(ECF No. 81 at 10.)

This is unpersuasive. Such a construction fails to account for, or give meaning to, the limitation supplied by the plain and exacting modifying words "Maryland state trial or appellate." In other words, if the Supreme Court of Maryland had the intention that Plaintiff ascribes it – *i.e.*, merely to differentiate between judicial and non- (or quasi-) judicial tribunals – the modifying words "state trial" and "appellate" would be mere surplusage. Moreover, even if Plaintiff is correct that the rule drafters intended to differentiate between court and non-court processes, such an interpretation or construction still does not yield the outcome he desires, inasmuch as it fails to

account for the words "Maryland state trial or appellate courts" – which is to say this court would have to accept that the words "Maryland state trial or appellate courts" do not mean what they say.

Although the court's analysis can end here, a comparison of COVID-related administrative tolling orders issued by the Supreme Court of Maryland further supports that the Tolling Order does not favor Plaintiff's interest.  On April 24, 2020, the Supreme Court of Maryland amended the Tolling Order from application to "matters required to be filed in a Maryland state court"[12] to "matters required to be filed in a Maryland state trial or appellate court."[13]  While not determinative of the court's analysis, it is of some note that when given pause to contour the scope of the Tolling Order, the court did not broaden its application to simply "matters required to be filed in a court" or "matters required to be filed in a court within the state of Maryland" or "matters required to be filed in a court whose jurisdiction encompasses questions of state law" or the like.

The court appreciates that "federal courts around the country sitting in diversity have applied state COVID-era tolling provisions as substantive law." *Matiella v. Murdock St. LLC*, No. 21-CV-2112 (GMH), 2023 WL 4684854 (D.D.C. July 21, 2023) (citing cases).  Critically, however, courts do not apply such COVID tolling orders to the benefit of the plaintiff, as though by rote automation, simply on the basis that it is state substantive law.[14]  *See e.g., Ceriani v.*

---

[12] Amended Administrative Order on Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters (April 8, 2020), available at https://www.mdcourts.gov/sites/default/files/admin-orders-archive/archivedin2022/20200408emergencytollingorsuspensionofstatuesoflimitationsamended.pdf.

[13] Clarifying the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters (April 24, 2020), available at https://www.mdcourts.gov/sites/default/files/admin-orders-archive/archivedin2022/20200424clarifyingemergencytollingorsuspensionofstatutesoflimitationsamended.pdf.

[14] Indeed, application of state substantive law by a federal district court sitting in diversity jurisdiction might operate to yield a favorable result to a plaintiff seeking relief or, alternatively, to a defendant seeking to shield itself from liability.  In other words, merely because the court "applies" the state law does not mean it yields the result a plaintiff seeks.  This is no different from a negligence case in which the court, sitting in diversity, applies Maryland state law to determine whether the defendant owed the plaintiff a duty.  If the court determines as a matter of law that the defendant did not owe the plaintiff a duty, the defendant may win on a Rule 56 motion.  This case presents no different a mechanism: the court applies the Tolling Order to the facts of the case and either it does or does not yield results favorable to a plaintiff's claim.  Here, it does not.

*Dionysus, Inc.*, 599 F. Supp. 3d 365, 369 (E.D. Va. 2022) (noting that the Supreme Court of Virginia's emergency order is applicable to the court's analysis and analyzing the language of the emergency orders to determine whether they applied to the facts of the instant case); *Allen v. Sherman Operating Co., LLC*, 520 F. Supp. 3d 854, 864-65 (E.D. Tex. 2021) (noting that all the emergency orders issued by the Texas Supreme Court began with "Any deadline for the filing or service of any civil case . . ."); *Bownes v. Borroughs Corp.*, No. 1:20-CV-964, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (explaining that "the Michigan Supreme Court tolled the statutes of limitations in Michigan for at least 100 days due to the COVID-19 pandemic"); *Murden v. Wal-Mart*, No. 2:20-CV-2505-JPM, 2021 WL 863201, at *2 (W.D. Tenn. Mar. 8, 2021) (explaining that "Tennessee Supreme Court Order No. ADM2020-00428 states that '[d]eadlines set forth in court rules, statutes, ordinances, administrative rules, or otherwise that are set to expire between March 13 and March 31, 2020 are hereby extended through April 6, 2020'"). The tolling orders applicable in the above-cited cases do not contain the "required to be filed" limiting language at issue here (or words with like effect). These cases do not persuade the court that the Tolling Order operates to Plaintiff's benefit in this case.

Here, the Tolling Order is clear and unambiguous, it applies specifically to "matters required to be filed in a Maryland state trial or appellate court." *See Mattison v. Maryland Transit Admin.*, No. CV JKB-21-00168, 2021 WL 4503566, at *5 n.3 (D. Md. Oct. 1, 2021) (noting that "the Maryland Court of Appeals Order applies only to 'matters *required* to be filed in a Maryland state trial or appellate court'"). The instant case was not "required to be filed in a Maryland state trial or appellate court;" indeed, Plaintiff elected not to do so. Accordingly, the Tolling Order does

16

not operate to suspend the three-year state limitations period applicable to Plaintiff's claims set forth in the Complaint. State Farm is entitled to judgment as a matter of law.[15]

### V.     CONCLUSION

For the reasons set forth herein, State Farm's Motion for Summary Judgment (ECF No. 141) will be granted. A separate Order follows.

           /s/
Julie R. Rubin
United States District Judge

May 10, 2024

---

[15] The court need not reach, and will not address, State Farm's remaining arguments.